Case number 21-2859 Ahmed Hammoud v. Equifax Information Services et al. Argument not to exceed 15 minutes per side. Mr. Hammoud, I'm sorry, you may proceed for the appellate. Good morning, Your Honors, and may it please the Court. My name is Yusuf Hammoud and I represent the appellate in this matter. I respectfully request three minutes for rebuttal. Very well. The primary issue is whether or not the District Court erred in granting summary judgment on the question of reasonableness of experienced procedures to ensure maximum possible accuracy. The overwhelming majority of courts agree that this is a question normally left for the jury to decide. Only in cases where the facts are so one-sided, where the question of the reasonableness of procedures is beyond question, should a court grant summary judgment on this issue. Would you mind addressing the standing question? I'm curious about what your response is on that. With respect to the standing issue, Your Honor, the argument presented by Experian was that there is no evidence sufficient to show that the inaccurate bankruptcy record was disseminated to a third party. That is simply not true. There is evidence in the record showing that two credit reports were prepared. If you review the appellant's Consumer Credit Report, his Experian Consumer Credit Report, dated in or around September 2019, under the Inquiry section, it indicates that on two separate occasions, in May of And further, Experian testified that the inaccurate bankruptcy record was reporting until August of 2019. My understanding is that it was Settlement 1 that gathered some of this information together, and there were three different credit reporting agencies, right? How do we know? How do we infer that it was from We trace it back to Experian. Is that just an inference that we can draw based on what's in the record? Based upon the notes from the mortgage company, the mortgage company indicated that when they pulled the credit reports, it reflected two bankruptcy records reporting. Looking at the Exhibit Z, it has that dialogue. It says, yes, a member had a Chapter 7 BK in the past four years. He stated it was not his BK, but it shows up on the credit report. The credit report has two Chapter 7 BKs within eight years of each other. Is that what you're referring to? That is correct, Your Honor. One of the bankruptcy records, which was accurately reporting, belonged to him. It showed a filing date and a discharge date. The one that did not belong to him and was reporting on his credit report for around nine years just had a filing date with no discharge date. That's why the notes reflect that it seemed he still had a pending bankruptcy ongoing. Well, what do we make of the fact that it seems to me that the problem here resulted from the fact that your client's father screwed up because he put the wrong Social Security number on his, gave it the wrong Social Security number on a form for bankruptcy. Isn't that what happened? The day after filing, 24 hours later after filing the bankruptcy petition, an amended statement of Social Security number was filed. But that was filed under seal, wasn't it? We don't know, Your Honor. You don't know whether it was filed under seal? We don't know because with respect to the document, the judicial docket reflects that an amended statement of Social Security number was filed. We know it was thereafter updated because the discharge order reflected the correct Social Security number. We believe there was because Experian can only match records to consumers if there's a full nine-digit match. And that brings us, Your Honor, to the distinction between this case and the three out-of-circuit cases that Experian and the district court relied on. In Henson, the credit reporting agency or the CRA was reporting exactly what was in the public record. Nothing about that information was changed or even later updated, not for a single day but the entire time it was reporting. And the same thing applied in Wright. In Wright, the credit reporting agency reported a tax lien on the consumer's credit report. But it was an accurate reflection of what was contained within the public record. So what are you contending Experian should have done here? What action or actions should it have done to avoid liability? For one, Your Honor, Experian could have had a procedure to ensure the capture of amendments of statements of Social Security numbers. Experian has testified that the Social Security number is the single most important information in order to match a bankruptcy record with a consumer's credit file. But I thought, correct me if I'm wrong, but I thought the district court said that would require that you have somebody with legal training looking at the docket, right? Every one of these dockets? Your Honor, that's not the case here. Just reviewing the docket, the judicial docket, and seeing that it said an amended statement of Social Security number was filed would put even a lay person on notice that the Social Security number was thereafter changed. And this was filed 24 hours after the petition was entered with the bankruptcy court. So the difference between this case and Henson, Wright, and Childress is that in those other cases, those other out-of-circuit cases, the credit reporting agencies were reporting what was actually reflected within the public record. There was no correction in those other cases. Here, Experian was not mirroring what was reported within the public record. There was a correction made 24 hours later. I guess maybe this was Judge Bush's question. I thought it was under seal or I thought it was not a public, you had to do something else to get it. Yes, the docket entry said something, but somebody that had access to the docket system would have had to go in there and do it, which is why it had to be somebody that probably had some legal training. But maybe I'm wrong. Your Honor, I access PACER on almost a daily basis. I'm sure your Honors have also been on PACER. When you're looking at bankruptcy records as well, when you pull up the docket report at the upper left or the upper right corner, I can't recall, it indicates the last four digits of the debtor's Social Security number. So once the amendment was filed, it would have reflected within the docket report itself, as it did reflect within the discharge order later on. Is that something that could be automated in your mind or routinized? How do they know that just a docket would trigger? You would have something that would, any time this kind of correction was filed, it would trigger something and then they could look at it. I'm just trying to figure out what would be reasonable to expect a company like Experian to do. That's a good question, your Honor. Experian is a large corporation that deals in the data of consumers. I would say a lot of their procedures are automated. If they're handling consumer files for hundreds of millions of consumers, simply requiring a procedure that captures amended statements of Social Security numbers, I don't think it would be difficult on their part. The issue here is they never had such a procedure. And they understand the vital importance of matching the Social Security number. Because even if the name and the address match up, if there isn't a perfect match of the Social Security number, it won't populate onto a consumer's file. It won't match. Now, Experian was relying upon records from Lexis, is that correct? That is correct, their third-party vendor. So is your contention that they're not entitled to rely on information that appears on Lexis? They have to verify it themselves? That's not my contention, your Honor. But what Experian is saying is that Lexis is not the court docket. Experian is not obtaining this public record information from the court docket. In Henson, for example, the CRA had obtained it directly from the court docket that is not electronically available. And you're relying upon maybe a Lexis to reflect something. I guess if it were electronically available, Lexis wouldn't have it in its database. We rely on Lexis for all sorts of things when we're doing our work. And it seems to me it's a generally acceptable source of information. And I'm struggling with your, your contention seems to be that it's not enough to rely on Lexis, that you have to go beyond that to verify what is in Lexis. What I'm saying, your Honor, is Lexis is not the court docket. We know that if a judge or a clerk were to enter something on the judicial docket, it is a presumptively reliable source. Lexis is just another credit reporting agency. They are not the court docket. So if Experian wants to obtain records, bankruptcy records from Lexis, at a minimum, it should have some procedures in place to assure maximum possible accuracy. But what is their, and I'm not sure the cases flush this out in your favor, but what is, I'm wondering about an affirmative duty on Experian's part to go out and kind of ferret out inaccuracies as opposed to fixing promptly inaccuracies that are brought to its attention? And this goes to Judge Bush's point about Lexis. I mean, you presumably rely on Lexis to give you accurate information. What is the duty on Experian's part to go out and double check it and look for inaccuracies? Your Honor, we're not asking Experian to double check every information that comes in. We're not asking Experian, after receiving information, which is just summary data, not the actual court records that are filed from Lexis, to go into PACER and check it themselves. Experian has admitted they don't know what Lexis' collection procedures are. So if you're going to rely on another credit reporting agency, a third-party vendor, to provide you bankruptcy record information, public record information, at a minimum, you should have reasonable procedures in place to assure maximum possible accuracy. This court... Why is that not, so you're double checking what they're doing, aren't you? I mean, you're going, you're talking about going back onto the dockets to see whether there have been, in this case, a statement of social security number correction or whatever it was. I mean, that would require somebody at Experian to go to do that, right? And again, I'm not saying necessarily that's wrong. Maybe it's a jury question. But I mean, I'm just curious about, the cases don't seem to go that far, but maybe I'm misreading them. We're not asking them to go and double check it. They could implement a procedure or, at a minimum, inform Lexis that when an amended statement of social security number is filed, we expect you, you have to capture this, memorialize it. Experian doesn't know what the collection procedures are. They just blindly rely on Lexis to go out and collect. They don't give them any manuals, any guides, any procedures. This court in Tuomasi-Ancra v. Checker understood that... Counsel, your time is up. Would you like to go into your rebuttal time? If I can continue, Your Honor. You wanted to go into your rebuttal time at this point? Yes, just to end with this final point. In Tuomasi-Ancra v. Checker, Inc., this court indicated that when Congress used the language, maximum possible accuracy, it emphasized that it means more. There's a higher standard to the credit reporting agencies than just mere technical accuracy. So keeping that in mind, the question is, what reasonable procedures did Experian employ or implement to assure maximum possible accuracy? And the answer to that is they didn't have any procedures. They blindly relied on Lexis to provide information without providing them any manuals, guides, procedures, or policies to that effect. And with that, Your Honor, I save the rest of my time for rebuttal. Thank you, Mr. Amoud. Good morning, Your Honors. May it please the Court, my name is Christopher Hall and I represent Experian, the appellee in this case. Your Honors, the appeal here demonstrates the difference between pleading a case and proving it with admissible evidence to survive a summary judgment. To address plaintiff's standing and what my colleague just said here to answer Judge Nalbandian's question, the issue here when you review the actual admissible evidence in the record is that we just don't know where the information came from and we certainly don't know if it was the actual cause of plaintiff's alleged injury in this case. The only evidence about what was in the Settlement 1 report, the only report that plaintiff really points to to support his injury, is plaintiff's brother's testimony. Plaintiff's brother's testimony was the loan officer who pulled the report. But his testimony about the report is classic hearsay. The report itself is not in the record and there's no testimony from Settlement 1, the company that created the report, that would put that evidence into an admissible form to survive summary judgment. How do you respond to this exhibit I presided? Sure. The record on Experian's report and the disclosures there are records of requests for information from Experian about plaintiff. And as Experian's corporate representative testified and as plaintiff doesn't dispute, there are a number of credit products that Experian produces that don't include account level or what we sometimes call trade line level information or public record information. It may have just been a score. It may not have been. And to be clear, this is not simply a hypothetical lawyer argument throwing it at the case. Experian relied on Lexis to get this information. Other CRAs, chiefly Equifax, still have this information. And it's not in the record in the appeal here. But there was record in discovery that Equifax, too, had both bankruptcies. Well, this message says, please decline as a member wants to do a conventional loan specifically. Why isn't that an injury? Well, if you read that statement, Your Honor, in the notes, it says about a bankruptcy that's within four years. And then when you refer to Mr. Bassam Hamoud's testimony describing that same information, he talks about a bankruptcy record that he saw from 2016 or 2017 and explains that, well, a recent bankruptcy is going to make it hard to get a loan. But there's no dispute that Experian didn't have bankruptcy information from 2016 or 2017 in its file. So whatever he saw, whatever that note is reflecting about a recent bankruptcy from 2016 or 2017, that couldn't have come from Experian. Now, he might have been mistaken in what he saw or what he recalled, but then there's no admissible evidence on the injury point. But I'm curious, is there any dispute, the mortgage company cited the two bankruptcies, right? It did, Your Honor. Okay, so we know that the inaccurate information got to the mortgage company, right? We know that there was record of two bankruptcies that came from somewhere to the mortgage company. I'm curious about why this is a standing question. I mean, if the trans-union says there has to be disclosure of inaccurate information and that's an injury, right, it seems to me you can kind of get to that. It may not be you. So I don't know, isn't that a merits causation question as opposed to an actual standing question? I will certainly agree that they do overlap a little bit in these cases, and I think that that's the nature of a 1681EB claim that where the, you know, as the Supreme Court recently explained to Ramirez, we're talking about sort of a defamation analogy for the standing inquiry, and that is really what an accurate disclosure of credit reporting information is, a kind of codified defamation statute. The issue is when you compare what plaintiff's burden is at this stage in the case under Rule 56, right? He has to have admissible evidence to show that injury and to show the defamation actually happened and came from Experian in this case. We know about the Settlement 1 report that what we do know about it is it came from, pulled information from all three credit bureaus, and we don't know, and Mr. Basamahmoud was asked directly, could you tell where that information came from? He said no. He can't even click into it in his computer screen and see if it came from Experian, Equisex, or trans-union. So what is the permissible inference from that? I think the permissible inference is maybe it came from Experian, but maybe it didn't, and that's the kind of pure speculation that at this stage of the day cannot carry the case when there's no other evidence to close the gap here. Is there any evidence that it could have come from trans-union? In other words, is it either Equifax or Experian? I think that it's unknown in the record right now, Your Honor. I know it's outside the record in this case, Your Honor, but prior to 2018, the major bureaus, Equifax, Experian, and trans-union all used Lexis. In 2018, as part of a public records class action, trans-union stopped using them and switched to a different vendor. No way to know if trans-union at that point purged its previous records from Lexis or if it would have remained what was in its file. There's nothing in the record here to say what trans-union had on file when that, if Settlement 1 pulled that from them, if Settlement 1 pulled the public record and amalgamated it from all three bureaus. The reality of it is that the credit reporting agencies package up their data, and frankly, as best they can, and in as many ways as they reasonably can, to make marketable products, and so it's entirely possible that Settlement 1 purchases a full file from those bureaus. I mean, is it just a mathematical, so are we saying at best, at best, there's a one in two chance that it came from Experian, but there's no evidence that points one way or the other, and on a purely statistical, this is the old type of blue bus light bulb, but I mean, it's like statistically, if I'm just guessing, you're saying it's just a guess at this point, which two, and if the plaintiff has the burden, and again, is that a standing question, or is that just you can't prove your case? It's an evidentiary burden question, I think, more than a pure standing. I don't think there's any dispute when I look, when you look back at the district court's analysis, that if there were evidence to show, we pulled this information from Experian, when I saw it, it looked like it came from Experian, that would probably be enough. What we don't have is admissible evidence to sort of close the gap from Experian will concede it had both bankruptcies on file, Settlement 1 made an inquiry, it might have disclosed this information to Settlement 1, but it might not have, and there isn't any way. But why is that not a permissible inference in favor of the non-moving party? Well, because when you look at the other evidence, it dispels that inference, right? The fairly traceable injury is also something the plaintiff has a burden on here to put forward with admissible evidence, and when you look at the only evidence there, it's talking about bankruptcy information from 2016 or 2017, and we can say for sure, if that's what he looked at, to stop this application and cause the, when you look at the district court's decision, it talked about the emotional distress and frustration of the delay in the application process, that was the injury, right, for standing purposes. That delay was caused by this more recent bankruptcy information, and we can say for sure that didn't come from Experian. I don't know where it came from, I don't know what it was, because the document isn't in the record, and for whatever reason, plaintiff, I mean, the difference, of course, to harken back to Twombly and Iqbal, is that you plead something to open the door to court, and open the door to discovery, and then you use discovery to get the evidence you need. And here, for whatever reason, plaintiff did not depose settlement one, he did not push to say where did this come from, and tie it to his injury. And that's really the point here, your honor, of our standing argument. It's not that disclosure of this information is another case. I mean, it's just, it strikes me as the old torts case where the two hunters both shoot and we're not sure which one exactly hit the guy, and they're both liable, right? That would be true, I think, your honor, if there was evidence that both Equifax and Experian definitely said this information, right? The defamation analogy, the letter analogy from Ramirez, right, is if Experian wrote this letter stuck in a drawer, no standing, we know somebody wrote, to use a letter analogy, somebody wrote a letter saying plaintiffs have filed two bankruptcies, one from 2016 or 2017. There's no anything in the record to say who wrote it. It could have been Equifax, it could have been Experian, it could have been TransUnion. Technically, it could have been something else. There's nothing to close that gap. Were there subpoenas issued to settlement one and depositions of settlement one people? My understanding is that plaintiffs sent a document subpoena to settlement one, but he did not depose them. They did not put a records affidavit in. I believe they did produce a report, but it's not in the record here, your honor. Do we think that settlement, I suppose I'm just asking you to speculate, but do we think that settlement one's files would reflect where they got the information? I would presume that at least a corporate representative of settlement one could say, oh, every time we do poll, we do poll the public records from all three, and if it's here, it's because it came from all three, or it came from X, Y, or Z. We could answer this question for sure in discovery, your honor. To be clear, our argument isn't that this publication of this information isn't the kind of thing that would confer standing. It's just that we don't know, and there isn't anything to close that speculative gap at this juncture. That's the argument on that point, because the admissible evidence that's not hearsay just doesn't answer the maybe question. At summary judgment, the inference is based on admissible evidence or evidence that could be reduced to admissible form. And the inference isn't based on lawyer argument, and it isn't based on hearsay, so the admissible evidence is maybe, maybe not. The only person who saw, who read the letter in this case, to go back to the analogy, no idea where it came from, and not even sure that the information experienced may have disclosed was the cause of the actual injury. It's fairly traceable to this information. Now, even supposing that, of course, the plaintiff does have standing to sue, and turning to the merits of the case, I think as your honors hinted there, there's a 30-year body of case law tracing back to the Henson case in the 7th Circuit and moving through to Cushman in the 3rd Circuit, more recently Losh down the 11th Circuit, and similar with this court's opinion in Spence, that recognizes that Congress did not impose strict liability in the FCRA, and that compliance with Section 1681EB is almost entirely a measure of making sure you obtain information from reliable sources. Well, I mean, we do, there are some cases, obviously, and they're out there that say that this is a jury question, right? Or that typically it would be a jury question. It's typically a jury question when there's evidence on both sides. Here, again, there isn't any admissible evidence that Experian's reliance on Lexis was unreasonable in this case. To hit a few points, your honor, plaintiff argues that the cases that the district court relied on, and that Experian relied on, simply don't apply to Lexis, and that's simply not true. The Wright case specifically explains in its facts it's a tax lien case that Experian, the CRA in that case, obtained its tax lien information from Lexis. Experian explains that the issue there was, the issue in Childress was reporting voluntary dismissals and bankruptcy versus just reporting a dismissal. That court also explained Experian obtained its bankruptcy information from Lexis, who gets it from Pacer. The exact facts in this case. Why didn't Lexis reflect the fact that there had been an amended Social Security number filed in this bankruptcy? I just want to understand mechanically what went wrong. Why didn't they have it? Because Lexis doesn't monitor, for its reporting to the CRA, it doesn't monitor every filing in a bankruptcy docket. It monitors the petition, it pulls the petition, and it pulls the discharge, the two most significant documents. And plaintiff's complaint about relying on Lexis, as your honor pointed out, is a little bit misguided. Courts rely on Lexis all the time. Plaintiff relies on Lexis in his brief. The McIntyre case that he invites his court to follow is an unpublished decision from the District of Massachusetts, published plaintiff's side in the Lexis report. I guess I'm just trying to figure out mechanically what would Experian have to do to capture this correction on a routine, before being told by the consumer that there's a problem. We'd have to monitor every filing. We'd have to presume that there's a potential every time that the consumer or its lawyer. That's true. But couldn't you have like an evergreen search on court link or whatever that just had a hit for social security change, or whatever the name of the stock it is? I suppose, I mean, it wouldn't be that difficult, would it? At some point, I don't know, honestly, I don't know from the record in this case, I don't know when the amended social security number actually made its way to the electronic face of the document. We know it didn't happen instantaneously, as the district court noted, the bankruptcy court itself relied on it. I take it these docket entries have a certain name. It's called social security notice of change, whatever it is. Any time that docket entry appears, you could have somebody get a notice of it, right? Someone at Experian could get a notice of it and go look at it. Right. Somebody at Experian could assume that at any point in a consumer's bankruptcy, something is filed, that the bankruptcy is dismissed. And who does monitor for those things? Obviously, what Lexis doesn't monitor to, and what Experian doesn't monitor for, is nuanced niche issues, there's no evidence in the record how often this happens. One presumes it's rare, that usually bankruptcy filers, either pro se or with attorneys, get their information right. It's an odd occurrence. There's no evidence that this is a frequent occurrence. That's the chief distinguishing factor from this case and the McIntyre case that plaintiff wants the court to file. In that case, there was evidence of 2,500 entries that had to be corrected on dispute. Here there's entry of one entry that as soon as Experian had actual notice that the information was wrong, it was corrected. So there's no evidence that Lexis was unreliable as a general matter, let alone that Experian had any notice of that factor. And it's directly in line with what this court has said about the statutory scheme that Congress has codified. Is there any evidence in the case that this happened to any other consumer? No, there's no evidence in this case of it being anything other than a one-off, Your Honor. And that's really the issue here, is we have a vendor, it's not blind reliance, it is something like a 20-year now contractual relationship, they are audited, there's a manual produced in this case that explains the procedure, and there are procedures to address this issue. They're just dispute procedures, and that's what Congress intended. It recognized that mistakes will happen, and so Congress said when it amended the SCRA in 1996, that the heart of its efforts to ensure ultimate accuracy is to make sure consumers have a means to get their files and dispute it, which is in line with what this court has said in Spence. Your Honors, I'd like to touch on a couple of points in my rebuttal. Earlier, Judge Bush, you asked me, is it possible for them to implement the procedure? Well, we know when Chapter 7 bankruptcies are filed, Experian has automated procedures that change all of the accounts that predated the bankruptcy filing to show a zero balance and indicate that the account was included in the bankruptcy. This is not something in which an employee at Experian is manually doing. These are all automated procedures, so can they implement something to capture whenever an amended statement of social security number is filed? Yes, and I believe it would be fairly easy for them. The other thing that I wanted to talk about is can this information have come from TransUnion? The answer is no. Why? Because TransUnion was not reporting two bankruptcies on the appellant's credit report. This indicates to us that TransUnion, a major credit reporting agency, had it correct. What is the record evidence with regard to Experian and Equifax, and how it's more likely than not that Experian was the source? Well, we know according to Experian's testimony that the inaccurate bankruptcy record was reporting until August of 2019, and we know that inquiries were made on the consumer's credit report in May and June of 2019, in which they produced their credit reports. In other cases, Experian has argued that soft inquiries are different than hard inquiries, they produce less information. Here we have two hard inquiries, which leads us to believe that the entire consumer report was provided, because the inaccuracy The hard inquiries from settlement one. The hard inquiries on the appellant's consumer credit report. If we're looking at the Experian credit report dated September 2019 at the bottom, it says inquiry shared with others. It indicates that there were two inquiries made in May and June of 2019. What about with regard to Equifax? In other words, is it only Experian? I'm trying to figure out why we would infer that it would be Equifax. I suppose it could be the light most favorable to you, but I'm just trying to see if there's a way to eliminate the other two. I think at a minimum, Your Honor, it presents a genuine issue of material fact that should be left for the jury to decide, but we do know that Experian was reporting the two bankruptcy records, at least until August of 2019. Do you have any other questions? We will take the case under submission, and the clerk may call the next case.